JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LIBOR KOZNAR,

       Plaintiff,

-v-

THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT ("NYPD") DEPUTY CHIEF JAMES MCNAMARA, NYPD INSPECTOR SALVATORE DIPACE, NYPD SUPERVISOR FIRST NAME UNKNOWN ROSADO, and NYPD OFFICER KERRY WHITE,

       Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Index No.**

**ECF CASE**



---

Plaintiff LIBOR KOZNAR, by his counsel, GIDEON ORION OLIVER, as and for his Complaint against Defendants, hereby alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. § 1988 for violations of his civil rights, as secured by said statutes and the Constitution of the United States and the Constitution and laws of the State of New York.

2. On February 29, 2012, Mr. Koznar was lawfully engaging in expressive conduct protected by the First Amendment to the United States Constitution and Article I, Section 8 of the New York State Constitution, when, without lawful authority or justification, and acting pursuant to the unlawful policies, practices, and customs complained of elsewhere herein, Defendants JAMES MCNAMARA and FNU ROSADO ordered Mr. Koznar's arrest, after which defendant WHITE participated in his arrest and/or arrest processing.

3. Mr. Koznar was present in the vicinity of Zuccotti Park located opposite 1

Libertty Plaza shortly after midnight on February 29, 2012 engaging in peaceful, protected conduct, when he was targeted for arrest, and arrested, for the content of his speech alone.

4. The incident leading up to Mr. Koznar's arrest, and the arrest itself, can be seen in the *Gothamist* article published on February 29, 2012 at 10:00 am at the link below entitled "Videos: NYPD Randomly Arrests Occupy Wall Street Protesters At Zuccotti Park" by Christopher Robbins, with additional reporting by John Del Signore and Katie Sokoler, available at: http://gothamist.com/2012/02/29/video_police_arrest.php

5. Specifically, the conduct leading up to Mr. Koznar's arrest, as shown in the embedded video linked to in the *Gothamist* article (also available here - https://vimeo.com/37646681) - consists of Mr. Koznar's standing with and near some journalists behind a police line and shouting, two times, "Anthony!, Anthony!," at a person who had just been arrested, in an attempt to get his last name, as others asked, "What's your name?."

6. That conduct can be all be seen beginning at approximately 1:46 of the video at https://vimeo.com/37646681.

7. Defendant Rosado's ordering his arrest can be seen at approximately 1:46, and the arrest itself is over as of 1:58.

8. As a result of Mr. Koznar's arrest, he was detained for approximately six hours and released with a summons sworn to by defendant White.

9. The summons alleged that defendant White observed Mr. Koznar engage in Disorderly Conduct in violation of New York State Penal Law Section 240.20 by creating "unreasonable noise" at approximately 12:15AM opposite 1 Liberty Plana, as follows: he was allegedly observed being "loud and using a high volume of noise causing unreasonable noise" and "shouting on a NYC public street."

10. As a result of those sworn allegations, Mr. Koznar was prosecuted in New York City Criminal Court.

11. Mr. Koznar and/or counsel appeared on numerous occasions before the case was ultimately dismissed for legal insufficiency.

## JURISDICTION AND VENUE

12. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

13. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

14. Venue is proper pursuant to 28 U.S.C. §1391(b) in that Plaintiff's claims arose in the Southern District of New York.

## PARTIES

15. Plaintiff LIBOR KOZNAR is a Caucasian male, and at all times relevant to this action was a resident of New York City.

16. Defendant THE CITY OF NEW YORK ("NYC" or "the City") is a municipal entity created and authorized under the laws of the State of New York, with general offices located at City Hall, New York, New York 10007.

17. Defendant City is authorized by law to maintain the NYPD, which acts as its agent in the area of law enforcement, and Defendant NYC is ultimately responsible for the NYPD and assumes the risks incidental to the maintenance of it and its employees.

18. Defendants NYPD Lieutenant NYPD DEPUTY CHIEF JAMES MACNAMARA, INSPECTOR SALVATORE DIPACE, and SUPERVISOR FIRST NAME UNKNOWN ("FNU") ROSADO were at all times herein supervisors of Defendant White and officers,

3

employees, and agents of the NYPD who were personally involved in depriving plaintiff of plaintiff's rights and in implementing the unconstitutional policies, practices, customs and/or conduct complained of herein, as set forth more fully below. Defendants MacNamara, DiPace, and Rosado are being sued herein in their individual and official capacities.

19. Defendant NYPD OFFFICER KERRY WHITE, was at all times herein an officer, employee, and agent of the NYPD and was personally involved in depriving Mr. Koznar of his rights and in implementing the unconstitutional policies, practices, customs and/or conduct complained of herein, as set forth more fully below.

20. Defendant White is being sued herein in his individual and official capacities.

21. At all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

22. Each and all of the acts of Defendant White alleged herein were done by him while acting within the scope of his employment by the Defendant City.

23. Each and all of the acts of the Defendant White alleged herein were done by Defendant White while acting in furtherance of his employment by the Defendant City.

24. Defendant White was responsible for implementing and/or enforcing the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through his acts and/or failures to act, as set forth more fully below.

25. At all times relevant herein, as set forth more fully below, Defendant White's actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate

indifference to or a reckless regard for the natural and probable consequences of his acts and/or omissions.

## STATEMENT OF FACTS

26. Prior to Mr. Koznar's arrest on February 29, 2012, Mr. Koznar was engaged in expressive conduct protected by the First Amendment to the United States Constitution Article I, Section 8 of the New York State Constitution.

27. On September 17, 2011, persons associated with a movement called Occupy Walls Street ("OWS") began a 24-hour occupation of Zuccotti Park, a privately owned public space in lower Manhattan also known as Liberty Plaza.

28. Zuccotti Park/Liberty Plaza is a Privately Owned Public Space that was created via a Special Permit issued by the New York City Planning Commission ("CPC") in 1986 pursuant to a provision of the New York City Zoning Resolution ("ZR" or "Zoning Resolution") in effect at that time.

29. Under the Special Permit, Liberty Plaza is defined as a "permanent open park" for the "public benefit."

30. Under the relevant provisions of the ZR, at least 50% of the sidewalk frontage of such a POPS must be free of obstruction, and circulation paths must connect to each of the street frontages. *See* ZR 37-721; 37-723; 37-726.

31. Any proposed modifications to Liberty Plaza's design must first go through a City approval process. *See, e.g.,* ZR 37-62, et seq.; 37-38; 74-91.

32. The CPC is precluded by statute from authorizing changes to such a POPS' physical design unless the changes will improve compliance with the applicable public accessibility standards. *See* ZR 37-625.

33. Under the ZR, any prohibition on conduct in such a POPS must be clearly posted in writing. *See* ZR 37-73, *et seq.*

34. By long-standing City practice, any such prohibitions must be reasonable.

35. City law requires that "public plazas shall be accessible to the public at all times, except where the CPC has authorized a nighttime closing." *See* ZR 37-727.

36. Between September 17, 2011 and November 15, 2011, the Occupy Wall Street movement physically occupied Liberty Plaza.

37. On the early hours of November 15, 2011, the NYPD raided Liberty Plaza and forcefully cleared it, arresting scores of occupiers for offenses including trespassing.

38. As a result of the NYPD's early morning raid on Liberty Plaza, there were mass arrests and property destruction. For example, the NYPD and/or other City agencies destroyed The People's Library, a collection of books and other materials belonging to OWS. Plaintiffs incorporate by reference the allegations contained in the Complaint in *Occupy Wall Street, et al. v. The City of New York, et al.*, 12-cv-04129 (GBD).

39. Upon information and belief, no emergency situation existed in Liberty Plaza on November 15, 2011, when the NYPD conducted its early morning raid; and/or the NYPD and other City agencies and agents deliberately overstated any such public safety concerns.

40. Beginning on November 15, 2011, and for significant periods of time thereafter leading up to and including least March 17, 2012, the NYPD erected metal barricades around Liberty Plaza, and members of the public were subject to searches of their personal belongings by security personnel as a condition of entering Liberty Plaza.

6

41. The NYPD also enacted and enforced arbitrary and shifting criteria determining who could enter the park, at what times they could enter, and what behavior they could engage in within Liberty Plaza.

42. No CPC permission was sought or granted to change the physical layout of Liberty Plaza.

43. No CPC permission was sought or granted to change the rules of conduct within Liberty Plaza.

44. The shifting rules regarding entry and conduct enforced by Defendants to limit First Amendment and other protected activity within Liberty Plaza were not lawfully imposed.

45. Those restrictions were imposed and enforced, including by defendants, with malice, and in retaliation against protected conduct, including in connection with this incident.

46. Those actions, as well as the actions taken against plaintiff complained of herein, violated not only the terms of the Special Permit and New York City Zoning Law, but also the United States Constitution and the constitution and laws of the State of New York.

47. In 1977, the New York City Police Department entered into a Stipulation and Order in *Black v. Codd*, 73 Civ. 5283 (JMC) (SDNY, June 1, 1977). The Stipulation and Order states:

> [I]t is the policy of the New York City Police Department and the defendants that when a person (or persons) is detained, stopped or arrested in public areas, a person or persons not involved in the conduct of which the first person is stopped or arrested may remain in the vicinity of the stop or arrest as an onlooker or onlookers, subject to the safety of the person stopped, the third persons, the general public, and officers of the Police Department, and to provisions of law e.g. P.L. § 195.05.

48. The Stipulation and Order defines an "onlooker" as a "person remaining in the vicinity of a stop or arrest" and states that onlookers "shall not be subject to arrest for violation

of Penal Law §195.05 unless the officer has probable cause to believe a violation of Section 195.05 exists."

49. It further states that "[t]aking photographs" and "[r]emaining in the vicinity of the stop or arrest" explicitly do not "constitute[] probable cause for arrest or detention of an onlooker unless safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated."

50. The Stipulation and Order also requires that the arresting officer shall "report the action" to a supervisor at the precinct.

51. The Stipulation and Order has historically been ignored. *See, e.g., Tonge v. Kelly*, 19993 WL 16121 (EDNY, 1993) ("the City failed for ten years to maintain the formal guidelines to which it had agreed and to inform its police recruits and officers in its Patrol Guide of the standards established in the *Codd* consent order").

52. After the 2004 Republican National Convention ("RNC") in New York City, dozens of lawsuits were filed alleging, *inter alia*, that the NYPD engaged in retaliatory mass arrests in violation of the First Amendment and other rights of protesters and bystanders (including journalists), without giving constitutionally meaningful and adequate dispersal orders and opportunities to disperse, applying the Disorderly Conduct provisions of the New York State Penal Law (among others) in an unconstitutional manner. *See, e.g., MacNamara v. City of New York*, 04 Civ. 9216 (RJS) (JCF) (S.D.N.Y.).

53. Numerous bystanders and journalists were detained and/or arrested during the 2004 RNC.

54. Between 2004 and 2007, the NYPD made mass arrests on the nights of many monthly Critical Mass bicycle rides.

55. Numerous bystanders and journalists were detained and/or arrested in connection with the NYPD's Critical Mass enforcement efforts.

56. In 2007, dozens of protesters and bystanders sued the NYPD alleging, *inter alia*, that the NYPD engaged in retaliatory mass arrests in violation of the First Amendment and other rights of protesters and bystanders (including journalists), without giving constitutionally meaningful and adequate dispersal orders and opportunities to disperse, applying the Disorderly Conduct provisions of the New York State Penal Law (among others) in an unconstitutional manner. *See Callaghan v. City of New York*, 07-CV-9611 (PKC) (SDNY 2007).

57. Journalist and bystander arrests during the RNC prompted several publications and advocacy organizations to write the NYPD, the City, and/or the Office of the District Attorney of New York County to complain about the arrests of journalists.

58. The NYPD has been sued repeatedly, and recently, for interfering with the First Amendment rights of bystanders and observers, outside of the OWS context.

59. Journalist Josh Stearns tracked journalists arrested at Occupy protests across the country, including in New York City, and his internet publications document that the NYPD arrested dozens of journalists between around September of 2011 and September 17, 2012 in connection with OWS. *See* https://storify.com/jcstearns/tracking-journalist-arrests-during-the-occupy-prot; https://storify.com/jcstearns/one-year-of-occupy-one-year-of-journalist-arrests.  On September 17, 2012 alone, the NYPD arrested a number of journalists, several of whom have sued the City. *See, e.g., Christopher Faraone v. City of New York, et al.*, 13-cv-9074 (TPG) (SDNY 2013); *Julia Reinhart and Timothy Eastman v. City of New York, et al.*, 13-cv-8314 (JPO) (SDNY 2013).

60. According to the *Gothamist* article, defendant DiPace and officers under his supervision were involved in determining whether particular objects were blankets or sleeping bags.

61. According to the *Gothamist* article,

> Shortly before midnight, a group of officers began moving through the park, inspecting bags, and shooing away the handful of protesters, some of whom scattered immediately rather than have their bags inspected. When asked what law they were breaking, Officer DiPace replied, "There's a law against everything. That's America."

62. Also according to the *Gothamist* article, then, "[a]t the entrance to the park, the arrests began with the individual seen in this video, who insists police arrested him after [he] sat down on the sidewalk."

63. The *Gothamist* article then cites to the https://vimeo.com/37646681 video referred to above, on which Mr. Koznar's arrest can be seen, as discussed above.

64. The video also depicts defendant Macnamara directing and supervising arrests at that time, place, and location, including Mr. Koznar's.

65. At the time of Mr. Koznar's arrest, he was engaged in peaceful, constitutionally protected conduct.

66. As a result of the foregoing, Mr. Koznar was unlawfully deprived of his rights to express himself and to assemble, his liberty rights, and was otherwise damaged and injured.

**FIRST CAUSE OF ACTION**

**DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION
THROUGH 42 U.S.C. § 1983**

67. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

68. Defendants, under color of state law, unlawfully seized and arrested Plaintiff.

69. Defendants did not have probable cause to arrest Plaintiff, nor was it objectively reasonable for Defendants to believe that they did have probable cause to arrest Plaintiff.

70. Defendants' decision to arrest Plaintiff was based upon Plaintiff's First Amendment-protected expression, and not upon Plaintiff's violation of any provision of the law.

71. By their conduct and actions and/or omissions in depriving Plaintiff of his freedoms to be let alone, to move freely, to assemble, to associate, and to enjoy his property, in seizing him, in falsely arresting him, in maliciously abusing process against him, in retaliating against them for the exercise of constitutionally protected rights, in violating his rights to due process and equal protection, and/or for failing to remedy the aforementioned violations after having witnessed them or having been informed of them by report or appeal, and/or by failing properly to train, supervise, or discipline employees of the Defendant CITY OF NEW YORK under their supervision, Defendants, acting under color of law and without lawful justification, intentionally, maliciously, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, deprived plaintiff of the equal protection of the laws and/or of equal privileges and immunities under the laws, and thereby caused injury and damage in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, and Fourteenth Amendments, and the attendant provisions of the New York State Constitution.

72. By the conduct described above, Defendants, under color of state law, subjected Plaintiff to the foregoing acts and omissions without due process of law and in violation of the

First, Fourth, and Fourteenth Amendments to the United States Constitution, through 42 U.S.C. § 1983, and the attendant provisions of the New York State Constitution, thereby depriving Plaintiff of his rights, privileges and immunities, including, without limitation, deprivation of the following constitutional rights:

a. Freedom to engage in protected speech, expression and association, without undue constraint or governmental retaliation;

b. Freedom from unreasonable seizures of his person, including but not limited to the excessive use of force;

c. Freedom from arrest without probable cause;

d. Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Plaintiff were aware and did not consent;

e. Freedom from deprivation of liberty and property without due process of law; and

f. The enjoyment of equal protection, privileges and immunities under the laws.

73. As a result of the foregoing, Mr. Koznar was unlawfully deprived of his rights to express himself and to assemble, his liberty rights, and his property rights, and was otherwise damaged and injured.

## SECOND CAUSE OF ACTION

### FALSE ARREST

74. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

75. As a result of Defendants' conduct as described above, Plaintiff was subjected to illegal, improper, and false arrest by Defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent.

76. As a result of the foregoing, Mr. Koznar was unlawfully deprived of his rights to express himself and to assemble, his liberty rights, and his property rights, and was otherwise damaged and injured.

### THIRD CAUSE OF ACTION
### FIRST AMENDMENT

77. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

78. In detaining and arresting Plaintiff, in maliciously abusing process against Plaintiff, and in implementing, enforcing, encouraging, sanctioning, and/or ratifying policies, practices, and/or customs punishing peaceful protest, Defendants violated Plaintiff's rights to speak, assemble, associate, and petition the government for redress of grievances peaceably in retaliation for their speaking out on a matter of public concern.

79. As a result of the foregoing, Mr. Koznar was unlawfully deprived of his rights to express himself and to assemble, his liberty rights, and his property rights, and was otherwise damaged and injured.

### FOURTH CAUSE OF ACTION
### SELECTIVE ENFORCEMENT

80. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

81. Defendants' use of the New York State disorderly conduct statute against Plaintiff, but not others similarly situated, was invidiously discriminatory, malicious, purposeful, and/or arbitrary and capricious.

82. Defendants' selective enforcement of the New York State disorderly conduct statute against Plaintiff violated Plaintiff's constitutional rights under the Fourth, , and Fourteenth Amendments to the United States Constitution.

83. As a result of the foregoing, Mr. Koznar was unlawfully deprived of his rights to express himself and to assemble, his liberty rights, and his property rights, and was otherwise damaged and injured.

## FIFTH CAUSE OF ACTION

### MALICIOUS ABUSE OF PROCESS

84. Plaintiff incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

85. Defendants issued legal process in the form of police records relating to Plaintiff to detain and prosecute Plaintiff

86. Defendants arrested Plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

87. Defendants acted with malicious intent to do harm to Plaintiff without excuse or justification.

88. As a result of the foregoing, Mr. Koznar was unlawfully deprived of his rights to express himself and to assemble, his liberty rights, and his property rights, and was otherwise damaged and injured.

## SIXTH CAUSE OF ACTION

### MALICIOUS PROSECUTION

89. Plaintiff incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

90. Defendants initiated prosecution against Plaintiff without probable cause to believe that it could succeed, the prosecution was brought with malice, the prosecution terminated in plaintiff's favor, and as a result Mr. Koznar suffered cognizable liberty deprivations.

91. As a result of the foregoing, Mr. Koznar was unlawfully deprived of his rights to express himself and to assemble, his liberty rights, and his property rights, and was otherwise damaged and injured.

## SEVENTH CAUSE OF ACTION
## FAILURE TO INTERVENE

92. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

93. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other law enforcement agency employing unjustified and excessive force against a civilian or falsely arresting a civilian.

94. Defendants were present for the above-described incident and witnessed other defendants unlawfully arrest Plaintiff.

95. Plaintiff's was clearly without probable cause or other legal justification, and was based on facts alleged by Defendants, which Defendants knew to be false, yet Defendants failed to take any action or make any effort to intervene, halt or protect Plaintiff from being unlawfully and wrongfully arrested.

96. As a result of the foregoing, Mr. Koznar was unlawfully deprived of his rights to express himself and to assemble, his liberty rights, and his property rights, and was otherwise damaged and injured.

### EIGHTH CAUSE OF ACTION

#### *MONELL* CLAIM AGAINST DEFENDANT CITY THROUGH 42 U.S.C. § 1983

97. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

98. All of the acts and omissions by the named and unnamed individual police officer Defendants described above were carried out pursuant to policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the Defendant CITY and its agency, the NYPD.

99. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police Defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

100. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

101. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to:

  a. The policy and practice of applying PL § 240.20 (2) – Unreasonable Noise in circumstances where there is no lawful authority to make an arrest for a violation because the noise being made is not unreasonable. .

102. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD were enacted based on Plaintiff's First Amendment protected activity and not for any legitimate law enforcement purpose.

103. As a result of the foregoing, Mr. Koznar was unlawfully deprived of his rights to express himself and to assemble, his liberty rights, and his property rights, and was otherwise damaged and injured.

## JURY DEMAND

104. Plaintiff demands a trial by jury in this action of all issues pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

A. Compensatory damages against the Defendants jointly and severally; and

B. Punitive damages against each Defendant; and

C. Attorney's fees and costs pursuant to 42 USC §1988; and

D. Such other and further relief as the Court deems just and proper.

DATED: New York, New York
     February 27, 2015

                Respectfully submitted,

/s/
Gideon Orion Oliver
*Attorney for Plaintiff*
277 Broadway, Suite 1501
New York, NY  10007
t: 646-263-3495